Moncure, J.
I am of opinion that the Circuit court did not err in overruling the motion of the- defendant to strike this case from the docket; I think the case was properly removed from the County'court to the Circuit court, under the fourth section of the act of March-28,' 1843; Sess. Acts, p. 18; which declares “that whenever amy civil action in a court, of law shall have been, or shall hereafter be, pending in a county or corporation court for the space of one year, without a final decision thereof having been made, it shall be lawful for any party, in any suc.h civil action, or- his or her legal representatives, to obtain, by motion, without notice, an order of such court for the removal'of such cause to the Circuit superior court of law and chancery of. the same county or corporation, upon the same-terms, and in the same manner in all respects; as- if it-were a suit in equity, and the same proceedings shall be had in reference to the removal and trial of such causes as are directed by the act passed the--18th (12th) of February. 1838, (Sess. Acts, p. 61,) entitled “ An act to authorize the removal of *539 causes in equity from the inferior to the 'Superior courts.” The case at the time of its removal was a civil action in a court of law, and had been pending in the County court, for the space of one year, without a final decision thereof having been made. Tt was, therefore, within the literal terms of the statute. Was it not within its spirit and meaning also ? I think it was. The manifest object-of the'statute was to avoid the great evil of delay in The trial of causes in the County courts. This evil existed in regard both to chancery suits and civil actions; but ;in a greater degree, to the former. The act of 1838 was intended to remedy the evil in regard to chancery causes,, and the act of .184/3 in regard to civil ■- actions. The action of unlawful detainer is peculiarly and especially within ■the scope of the policy of the legislature, as indicated by these acts. It is a remedy for a wrong which requires immediate redress. The law has, therefore, provided that it shall be prosecuted in a most summary way, and have precedence for. trial .over .all other civil causes. Tt was probably not contemplated by the legislature that such a proceeding for the redress of suchia wrong would ever “be pending.in-.a County-court for the space of one yeaiy without . a final decision thereof having been made.” .But if it would, surely the legislature intended that it might be removed to the «Circuit court, in the same manner-in which any other civil action, under. similar-. circumstances, might be so removed under the act. of 1843.
The ground on which the counsel of the plaintiff.in error contended that the action of unlawful detainer is not a civil action within the meaning of the act of 1843, is that that act applies only to civil = actions of which the Circuit court has original jurisdiction-; and the Circuit court has not original jurisdiction of an action of unlawful detainer. It is true that the Cir.cuit. court has not original jurisdiction of an action.of *540 unlawful detainer; The only reason for not giving suc^ jurisdiction is, that the nature of the wrong for the remedy lies, requires a more speedy redress ^an could well be afforded by that court, sitting as it ¿oes but twice in a year.
Formerly the County court, though holding a session every month, was not considered by the legislature as affording the means of a sufficiently speedy redress of the' wrong; and, therefore, a tribunal composed of at least two justices, and meeting not less than ten nor more than twenty days after the date of the warrant, was provided for the trial of actions off unlawful detainer. They are now triable by the* County court; but at any term whether monthly or quarterly :: and are still tried .in a summary way, and have precedence over all other civil causes on the docket. But while the Circuit court has never had original, it has always had appellate jurisdiction in actions of unlawful detainer ;• and I think the act off 1843 was not intended to be confined to civil actions of which the Circuit court has original jurisdiction,, but was intended, to embrace all civil aetions of which: that court has jurisdiction, whether original or appellate. I can. see no good, reason for the restrictive meaning ©entended for, contrary to the literal terms and obvious policy of the act. It was contended that as the act of 1843 declares that the same proceedings shall be- had in reference to the removal and trial off causes under that act, as are directed by the act of 1838 in regard to causes in equity; and. as the act of 1838 declares that the Circuit court shall have the same jurisdiction of a cause in equity removed under that act, and shall proceed therein in all respects as iff the- cause had been originally instituted in that court therefore, no civil action of which the Circuit court has not original jurisdiction can be removed under the-act of 1843, because no case in- equity of which the- *541 Circuit court has not original jurisdiction can be removed under the act of 1838. In other words, it was contended, if I rightly understood the argument, the act of 1843, in consequence of its reference to the act of 1838, is to be read as if the words, “and the Circuit superior court shall have the same jurisdiction thereof, and shall proceed therein in all respects as if the cause had been originally instituted in the Circuit superior court,” which are contained in the act of 1838, had been repeated in the act of 1843. And that as an action of unlawful detainer could not be originally instituted in the Circuit court, therefore that court could have no jurisdiction thereof, if removed from the County to the Circuit court. This argument, though plausible, is, I think, unsound. The words referred to were not used in the act of 1838 for the purpose of excluding from its operation any causes in equity of which the County court had jurisdiction and the Circuit court not; for there were no such causes. If the jurisdiction of the two courts in such causes was not entirely concurrent, certainly the Circuit court had jurisdiction of every cause in equity of which the County court had. The words ‘could only have been used for the purpose of giving to the Circuit court the same jurisdiction of a cause in equity removed to it as of a cause instituted therein. Different words might and probably would have been used if there had been any causes in equity cognizable in the County, and not in the' Circuit, court: but as there were not, the words used conveyed the idea intended as well as any that could have been selected. The act of 1843 refers to the act, of 1838 merely to avoid repetition;; and the legislature could not have intended, by the implied adoption of ambiguous words, to exclude from the operation of the former, the action of unlawful detainer, which, as I have already said, is- embraced both by the letter and the spirit of the act.
*542 The act of February 7th, 1849, Sess. Acts, p. 42, though passed after the removal of this case, was re-to in the argument as serving to show that prior acj. a c[yp action, in which the Circuit court had not original jurisdiction,-could not have been'removed from the County to :the-Circuit court under the act of 1843. The act of ,1849 is somewhat of the nature of a declaratory law. At all events, while it adopts a rule for the future, it does not even express the opinion of-thedegislature as to what had been the true rule before. It recites that different constructions had been put upon the 30th section of the act of April 16th, 1831, Sup. Rev. Code, p. .146, and -dhe 4th .section of the ,aet of March 28th, ,1843, and that it was desirable to have uniformity in the construction of the said sections. It then declares .that the Circuit courts shall have power to award a writ of error and supersedeas to any judgment, &c. of. the County courts in which the latter have original jurisdiction; and to order the removal of any civil action pending in such courts in the manner provided in the fourth section of the last recited act, notwithstanding that the amount in controversy in such judgment &c. may be,less than fifty dollars.
When the .act of 18.49 was passed, the Circuit.court had no original jurisdiction in pecuniary .actions, in which the amount .in controversy was less .than fifty dollars;; and it seems to have been supposed .by some that the Circuit court had no appellate jurisdiction in such cases. Those who entertained that supposition, as a’natural consequence, also .-supposed that as the Circuit court had neither original nor appellate jurisdiction in such cases, they could not therefore be removed from the County to the Circuit court under the act of 1843. And hence the act of 1849 was passed to remove all doubt on the subject, by declaring that the Circuit court” should have .jurisdiction of such cases, whether removed to it by writ of error ,&c. un-. *543 der the act of 1831, or an order of removal under the act of 1843.
The act of 1849 indicates the sense of the ture that the jurisdiction of the Circuit court under the act of 1843 should be-coextensive with its appellate jurisdiction-. The words “ notwithstanding that the amount in ^controversy in such judgment &c. may be less -than fifty dollars,” were certainly not designed to exclude the jurisdiction of the'Circuit court in an action of unlawful' detainer removed to it under the act of 1843. It would be strange indeed, if the legislature intended by the act of 1849 to confer jurisdiction on the Circuit- court under the act of 1843, in cases in which it had not original, and was • supposed by some not before to have had appellate jurisdiction, and at the same time to exclude its jurisdiction under that act in a case in which it always» had appellate jurisdiction.'
I am further of opinion that the»- Circuit court? did not err in overruling', the motion of the defendant to1 change the place of the case upon the docket; and» that the reason assigned by the court, to wit, “because this case occupied the place on the docket which it has occupied ever since it came into this court, and had priority over all civil causes in the County court, and was entitled to the» same priority: here that it - had in that court,” was-well founded,! and a good reason for overruling the motion. If, however, there had been any error in this-respect, I -do not see how it could have prejudiced the parties, or been any ground for reversing the judgment.
In regard to the exceptions of the defendant to opinions of the court permitting a witness who had surveyed, or partially surveyed, the land in controversy for the plaintiff, to refresh his memory by referring to certain papers which he had in his hand: The law on this subject is thus laid down' in Greenl. on *544 Evidence, § 436 : “ Though a witness can testify only suc^ ^ac^s as are within his own knowledge and re-yet he is permitted to refresh and assist his mem01y) by f,}ie use 0f a written instrument, memorandum or entry in a book, and may be compelled to do so if the writing is present in court. It does not ■seem to be necessary that the writing should have been made by the witness himself, nor that it should be an original writing, provided, after inspecting it, he can speak to the facts from his own recollection.” “And it is -not necessary that the writing thus used to refresh the memory, should itself be admissible in evidence.” Numerous authorities are cited by the author, which, I think, fully sustain his view of the law; though there is certainly some conflict, at least in the dicta of some of the judges.
The doctrine established by the authorities seems to be that if a witness, after looking at the paper to recall the facts, can speak from his own recollection of them, and not merely because they are stated or referred to in the paper, his evidence will be admissible, notwithstanding the manner in whieh his recollection was revived, and no matter when or by whom the paper was made, nor whether it be original, a copy, or an extract, nor whether referred to by the witness in court or elsewhere. 4 Philips’ Evi.; Cowen & Hill’s Notes, part 2, p. 734. This kind of testimony is liable to abuse; the chief objection to it being that the paper referred to operates on the mind of the witness like a leading question: but it is rendered necessary by the frailty of the human memory; and the abuse to which it is liable must be guarded against by the vigilance of the court. If after looking at the paper the witness cannot speak from his recollection merely, his testimony, so far as he cannot speak from his recollection, is inadmissible; and the paper itself, if admissible evidence, either alone, or so far as it may *545 be supported by the recollection of the witness or other testimony, must be produced. In Jacob v. Lindsay, 1 East’s R. 460, the witness was permitted to to a paper which itself was not admissible evidence. In Henry v. Lee, 2 Chitty’s R. 124, 18 Eng. C. L. R. 273, a witness was allowed to refresh his memory from a document though not written by himself. “It .is sufficient,” said Lord Ellenborough, C. J. in that case, “If a man can positively swear that he recollected the fact, though he had totally forgotten the circumstance before he came into court; and if upon looking at any document, he can so far refresh his memory -as to recollect a circumstance, it is sufficient^ and it makes no difference that the memorandum was written by himself, for it is not the memorandum that is the evidence, but the .recollection of the witness.'”
I see nothing in Starkie on Evidence, nor in the case of Doe ex dem. Church v. Perkins, 3 T. R. 749, so much relied on by the counsel for the plaintiff in error, which is in conflict with the doctrine as laid down by Q-reenleaf. On the contrary, the case of Doe v. Perkins is one of the cases cited by that author, and tends to support the doctrine. The point decided .therein, as stated in the marginal abstract, was that a- witness may refresh Ms memory by any book or paper, if he can afterwards swear to the fact from his own recollection. But if he cannot .swear to the .fact -from recollection, .any further than as finding it entered in a book or paper, the original book or paper must be produced. Mr. Justice Buller in Doe ex dem. Church v. Perkins, referred to a case of Tanner v. Taylor, in which, being an action for goods sold, “the witness who proved the delivery, took it from an account which he had in his hand, being a copy, as he said, of the day book, which he had left at home : and it being objected that the original ought to have been produced, Mr. Baron Legge said that if he would swear *546 positively to the delivery from recollection, and the Paper was only to refresh his memory, he might make of it. But if he could not, from recollection, gwear ¿epVery, any further than as finding entered in his book, then the.original should have been produced; and the witness saying he could not swear from recollection, the plaintiff was non-suited.” .
This doctrine is of easy application to the case under consideration. The witness was permitted to refer to two papers to refresh his memory. The first was an original paper; being a diagram made by the plaintiff of the tract of land claimed by Mm, which paper had an endorsement thereon in the handwriting of the plaintiff, stating that it was the tract on which the defendant lived. The witness stated that some years before, he surveyed two or three lines of the survey on which the defendant lived, and when he run the lines he had no authentic document to run them by, and only had the paper with the diagram and endorsement aforesaid. To this diagram the witness referred for courses and distances, and admitted that he did not remember how far he had run or what courses he had run, without reference to said paper; and did not recollect either course or distance independent of said paper. To the witness refreshing his memory from said paper, the defendant objected; but the court overruled the objection, directing the witnes? not to state anything set out in the paper, but only to state what acts he did in running the lines aforesaid, and what he found on the ground. I think there is no error in this ruling and direction of the court.
The witness had run certain lines, at the request of the plaintiff, and according to a paper containing a diagram, which the plaintiff placed in his hands. The' fact that such lines were run, was a link in the chain of the plaintiff’s evidence. Whether they> were lines *547 of the patent under which he claimed, depended upon a comparison with the patent which was before the jury, and the evidence of the surveyor as to the appearances upon the ground, &c. There was no objection to the fact as irrelevant evidence, but only to the use made of the paper, on the ground that not having been written by the witness, and he not recollecting what course or distance he had run independently of the said paper, it could not be referred to by him to refresh his memory. It was an original paper; was in court ; was identified by the witness; and, in connection with his testimony, was the very best evidence of the lines he had been requested by the plaintiff to run. The witness might have recollected the courses and distances of these lines; and if so, might have given evidence of them, without reference to the paper. But it could hardly be expected, after the lapse of several years, that he could remember them without such reference, or even with it. All that he could reasonably be expected to be able to say, was, that, at the plaintiff’s request, he ran certain courses and distances set forth in the paper which he had in court, and held in his hand. This he did say, and it was admissible evidence to prove the fact accordingly. In this and the like cases, the paper itself, being a part of the evidence, must be produced.
The other paper, to which the witness was permitted to refer, was an extract or copy from his field notes of the survey before mentioned, which notes were at his home. He said that the copy was accurately made by him, but did not pretend to say that he recollected the courses or distances deposed to from said copy, independently thereof. The defendant objected to the evidence, because the original field notes were not produced. The oourt overruled the objection, and permitted the witness to refer to the copy to refresh, his recollection of the running done by him. If the wit *548 ness, after referring to the copy, had said that he had no recollection of the facts therein contained, and could only say they were true, because they were therein contained, I think, according to the authorities before cited, it would have been necessary to have produced the original. There may be some ambiguity on this subject in the bill of exceptions, which might produce some difficulty, if the question were material; but in this case it is not. Understanding the court as permitting the witness- to refer to the paper merely to refresh his recollection of the running done by him, or of the facts therein set forth, I think there was no error in so doing.
In regard to the objection that the court permitted the witness Fisher to be sworn on the voir dire after his interest had been shown by evidence aliundej It is sufficient to say that the error of the court, if any, was cured by the fact, that before the- witness was sworn- in chief a deed was produced and proved, which terminated his interest.
In regard to the instructions : I think the court did not err in refusing to give those which were asked for by the parties, or in giving those which were given by the court. The agreement of the parties, which was by deed exhibited and proved to the jury, if it did not terminate the defendant’s right to hold the land in controversy on the 10th of April 1847, at least made him a tenant at will or at sufferance after that day; and such a tenant is not entitled to six months’ notice, to which a tenant from year to year is entitled. The most that he- can require is reasonable notice, and he is entitled to no notice if he claims- to hold adversely, or attorns to some other person, or does some other act disclaiming to hold as tenant. 1 Lorn. Dig. 165. In this- case there was evidence that the defendant refused to surrender possession of the land to Fisher according to the agreement. I think that the plaintiff, *549 being invested with the legal title, had a right to maintain the action at the time it was instituted, notwithstanding his executory contract with Fisher.
In regard to the only remaining question: I think the court erred in excluding the evidence of the witness Alexander Harrison, offered by the defendant. In a suit brought upon a deed, the plaintiff is not required to prove it without a plea of non est factum, verified by oath. But when, as in this case, a deed is introduced collaterally as evidence, it must be proved by the party introducing it, according to the rules of law; and the other party, without any denial of the deed on oath, may assail it by any evidence which shows, or tends to show, that it is not his deed; indeed, by any evidence which would be admissible on the' plea of non est factum. He may, therefore, introduce evidence tending to show that there was fraud in the execution of the instrument, as that it was misread to him, or Ms signature obtained to a different instrument from the one he intended to sign. Taylor v. King, 6 Munf. 358; Dorr v. Munsel, 13 John. R. 430; Van Valkenburgh v. Rouk, 12 Id. 337.
In the last case, the court said, “ If a deed be misread or misexpounded to an unlettered man, this may be shown on non est factum, because he has never assented to the contract. So, if a man be imposed upon, and signs one paper while he believes he is signing another, he eannot be said to have assented, and may show this on non est factum.” It does not certainly appear whether the defendant in this case was unlettered or not. His signature to the deed purports to have been made by himself, and the presumption therefore is, that he was not. But the admissibility of evidence tending to prove fraud in the execution of an instrument does not depend upon the fact that the party whose deed it'purports to be, was unlettered; though the weight of the evidence is materially increased thereby.
*550 In this case, the defendant offered to prove by one the subscribing witnesses to the bond, that he and defendant both understood the agreement (which -g jn yie handwriting of the plaintiff) as referring the to the land to the arbitrators named in said paper y that said witness was present when it was read to the defendant, and neither the witness nor the defendant understood or believed that said paper made the defendant the tenant of the plaintiff; nor did they know that any such thing was in said paper y and further, that both the witness and the defendant understood said paper as read to them, as simply referring to the arbitrators the right to said land, and not that the defendant had by that paper given up his right to the land, and referred to arbitrators his right to pay for improvements, to be set off against the annual rents of said land. If the paper was correctly read to the defendant at the time of its execution, his misunderstanding of it eould not affect its validity as a deed: And so far as the evidence offered tends to show a mere misunderstanding of the paper, it is wholly immaterial and irrelevant to the issue. But if it tends, in any degree, however slightly, to show that the paper was materially misread to the defendant at the time of its execution, and that he was thus induced to execute it, the evidence is admissible. I think it has such tendency, and ought to have gone to the jury, to he weighed by them with the other evidence in the case. It may be of little weight in itself to prove fraud in the execution of the paper, and of less or none when taken in connection with the other evidence. But of that the jury are the exclusive judges. The witness was selected by the parties to attest the instrument; and it was his duty to notice the circumstances attending its execution. He did not say that the paper was misread, nor how it was read to the defendant at the time of its execution. He may not have remembered particulars, or been able to state *551 more than his understanding of the substance of the paper as read to the defendant. That understanding was materially different from the plain meaning of the paper itself; and it is difficult to conceive that he could have so understood it, if he is a man of ordinary intelligence, and heard the paper correctly read. But these are matters for the consideration of the jury, and are adverted to here only to show that at least the evidence is relevant and admissible; which is the only question the court has to decide in regard to it.
I am of opinion that the judgment should-be reversed, the verdict set aside, and the cause remanded for a new trial to be had therein.
Lee and Samuels, Js. concurred- in>the opinion of Moncure, J.
Daniel, J. dissented.
Judgment reversed.1